| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------- | NOT FOR PUBLICATION |
| In re :<br>       Carmine Alessandro,<br>                  Debtor.<br>------------------------------------------------------- | Chapter 7<br><br>Case No. 10-12511 (AJG) |

**OPINION GRANTING UNITED STATES TRUSTEE'S REQUEST SEEKING
DISGORGEMENT OF FUNDS PAID TO DEBTOR'S COUNSEL**

**APPEARANCES:**

TRACY HOPE DAVIS
United States Trustee
33 Whitehall Street
21st Floor
New York, New York 10004
      By:  Susan D. Golden, Esq.

LAW OFFICES OF RONALD P. ZINNER
*Pro Se*
205-07 Hillside Avenue
Suite 25
Hollis, NY 11423


**ARTHUR J. GONZALEZ**
**Chief United States Bankruptcy Judge**

      Before the Court is the United States Trustee's ("UST") motion (the "Motion")

seeking disgorgement of all funds paid to the law firm of Ronald P. Zinner ("Zinner")

pursuant to 11 U.S.C. § 329(b) and Fed. R. Bankr. P. 2017 on the ground that the fees

were unreasonable and excessive in view of Zinner's failure to perform a reasonable

investigation prior to and after the filing of the chapter 7 petition (the "Petition") as well

as his failure to seek relief from the Court upon learning that he was misled by Debtor. A hearing was held on August 25, 2010.

**I. Facts**

On May 10, 2010, the debtor, Carmine Alessandro ("Debtor") came to Zinner at twelve o'clock noon to file the Petition, requesting that it be executed immediately in view of a foreclosure action against one of Debtor's properties set at two o'clock in the afternoon. (Resp. 2 ¶ 3, 4.) Zinner asked Debtor whether Debtor had previously filed a chapter 7 petition and Debtor answered in the negative. (Resp. 2 ¶ 5.) Zinner did not ask about any other chapters under which the Debtor could have filed, nor did Zinner check the Court's PACER system to determine the accuracy of Debtor's response. Both Zinner and Debtor signed the Petition, and on the second page where a debtor is required to disclose previous bankruptcy filings within the last eight years, the word "None" was entered. (Mot. 2 ¶ 4.) Zinner filed the Petition and the filing stayed the auction sale by eight minutes. (Resp. 2 ¶ 6.) Unknown to Zinner at the time, the Petition was Debtor's fifth bankruptcy filing.[1] (Mot. 2 ¶ 2.) Debtor paid Zinner a total of $4,000 for preparing and filing the Petition as well as other "related services that might be required" subsequent to the filing of the Petition. (Mot. 3 ¶ 5; Resp. 6 ¶ 22.) The $4,000 fee consists of a $1,500 flat fee to commence the Petition and $2,500 "to prepare, compile, evaluate, copy and file . . . [subsequent] paperwork." (Resp. 5 ¶ 20). On May 14, 2010,

---

[1] *See* UST's Motion 2 n.1. On April 23, 2008, Debtor filed his first petition under Chapter 13 of the Bankruptcy Code in this Court. *See* Case No. 08-22559 (ASH). On July 15, 2008, the case was dismissed for failure to comply with the filing requirements of the Bankruptcy Code Section 521(i). *Id.* (No. 35). Three days later, on July 18, 2008, Debtor filed his second Chapter 13 petition. *See* Case No. 08-23025 (ASH). On September 30, 2009, the case was dismissed for Debtor's failure to timely remit proposed plan payments to the Chapter 13 trustee, to provide required documentation, and to appear at the scheduled 341(a) meeting of creditors. *Id.* (No. 31). On November 14, 2008, Debtor filed a personal Chapter 11 petition in this Court. *See* Case No. 08-14514 (AJG). On February 17, 2009, Debtor filed the fourth case, also under Chapter 11. *See* Case No. 09-10684 (AJG). On March 25, 2009, on a motion by the UST, the third case was converted to Chapter 7. *See* Case No. 08-14514 (AJG) (Nos. 66, 67).

2

four days after the Petition was filed, the Court entered a notation on the case docket that Debtor was a "repeat filer."[2] (Mot. 3 ¶ 6.) On July 2, 2010, Zinner filed the supporting schedules on behalf of Debtor. (Resp. 3 ¶ 13.)

**II. Discussion**

The UST's motion seeks disgorgement of the $4,000 paid to Zinner on the ground that the fees were unreasonable and excessive in view of his failure to perform a reasonable investigation prior to and after the filing of the Petition as well as his failure to seek relief from the Court upon learning that he was misled by Debtor.

The Court will address its authority to review Zinner's fees for excessiveness. It will also consider whether disgorgement of all, or any portion, of the $4,000 fee is warranted because of Zinner's lack of reasonable inquiry prior to and after the filing of the Petition. Finally, the Court will determine if disgorgement is not granted in full, whether Zinner has met his burden of proving the reasonableness of the $4,000 fee.

**1. Authority of the Court to Review Zinner's Fees for Excessiveness**

Section 329(b) of the Bankruptcy Code provides that if "such compensation [paid or agreed to be paid by debtor to debtor's attorney] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to . . . the entity that made such payment." Under this section, the "reasonableness" of the transaction must be examined. *3 Collier on Bankruptcy* ¶ 329.04, at 329-13 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). The Court may reduce the compensation if it finds that the amount requested is

---

[2] The UST's Motion states that Zinner "was put on notice *three* [*sic*] days after the case was filed when the Court added an entry of the prior filings on the case docket." (Mot. 5) (emphasis in original). However, the Petition was filed on May 10, 2010, and the Court entered a notation that Debtor was a "repeat filer" on May 14, 2010, putting Zinner on notice of Debtor's prior filings *four* days after the Petition was filed.

3

excessive or of poor quality. *See In re Laberge*, 380 B.R. 277, 283 (Bankr. D. Mass. 2008) (finding that a $6,000 fee for 75 combined hours of attorney and paralegal time is not appropriate for the preparation of schedules for a no-asset case with few creditors, absent extraordinary circumstances). In addition, Bankruptcy Rule 2017(a) allows the court to "determine whether any payment of money . . . by the debtor . . . in contemplation of the filing of a petition under the Code . . . to an attorney for services rendered or to be rendered is excessive." The authority of the court to review fees for excessiveness "either on motion of a party in interest, or on the court's own initiative" is also reiterated in jurisprudence. *In re Ohpark*, 2010 WL 1930187, at *2 (Bankr. E.D. Va. May 12, 2010).

Therefore, this Court may review Zinner's fees for excessiveness and may disgorge the fee, or a portion thereof, to the extent that the Court finds that cause exists for such remedy.

2. **Cause for Disgorgement Due to Zinner's Lack of Reasonable Inquiry Prior to Filing of Petition**

The UST argues, among other things, that disgorgement of the $4,000 fee paid to Zinner is warranted because of his lack of reasonable inquiry prior to filing of the Petition. The UST asserts that "Mr. Zinner's signature on the petition constituted a certification that the Zinner [f]irm performed a reasonable investigation and determined that the Petition was well grounded in fact and warranted by existing law." (Mot. 4.) This assertion is supported by section 707(b)(4)(C) of the Bankruptcy Code[3] and

---

[3] Section 707(b)(4)(C) of the Bankruptcy Code provides:

> The signature of an attorney on a petition . . . shall constitute a certification that the attorney has –

4

Bankruptcy Rule 9011(b)[4]. In citing the latter rule, the UST notes that "an attorney's signature on a pleadings [*sic*] presented to the court represents that the attorney conducted a reasonable inquiry into the facts and law supporting the pleadings." (Mot. 4.) The UST argues that disgorgement is warranted based on Zinner's "failure to conduct the most basic inquiry into the debtor's affairs and history in this Court, render[ing] the amount of compensation received by the Zinner [f]irm unreasonable and excessive." (Mot. 1).

The phrases "reasonable investigation" and "reasonable inquiry" are used interchangeably in treatises. *See 3 Collier on Bankruptcy* ¶ 707.06, at 707-58; *2 Moore's Federal Practice*, § 11.11[2] (Matthew Bender ed., 3d ed. 2007). When an attorney conducts a reasonable investigation, she may rely on "objectively reasonable representations" of her client. *2 Moore's Federal Practice*, § 11.11[2]. "All *available* documents that are relevant to the case should be examined." *Id.* (emphasis added). The

---

> (i) performed a *reasonable investigation* into the circumstances that gave rise to the petition . . . ; and
> (ii) determined that . . . [it] –
>  (I) is well grounded in fact; and
>  (II) is warranted by existing law . . . .

11 U.S.C. § 707(b)(4)(C) (emphasis supplied); *3 Collier on Bankruptcy* ¶ 707.06, at 707-58.

[4] Bankruptcy Rule 9011(b) provides:
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition . . . an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*, –
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims . . . and other legal contentions . . . are warranted by existing law . . . ;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b) (emphasis supplied).

UST asserts that "[r]easonable investigation required counsel both to ask the Debtor probing and pertinent questions and to check the Debtor's responses in the Petition." (Mot. 4) (citing *In re Thomas*, 337 B.R. 879, 892 (Bankr. S.D. Tex. 2006)). In addition, the UST, citing *In re Oliver*, 323 B.R. 769, 773 (Bankr. M.D. Ala. 2005) observes that "counsel had a duty to conduct a reasonable investigation into whether the Debtor had filed a bankruptcy petition within the last eight years and should have done a PACER search to determine if [*sic*] the Debtor's filing status." (Mot. 5).

During the hearing on August 25, 2010, the UST noted that while Zinner could have easily checked the Court's PACER records, he was pressed for time to complete the filing of the Petition to stay the auction sale of Debtor's property. In fact, Zinner stated at the hearing that he was "rac[ing] against time" to protect Debtor's property. Even though the UST apparently accepts Zinner's explanation of "time pressure" regarding his failure to check the PACER system prior to the filing, the Court is not inclined to do so.

As the UST correctly argues, "'[a] lawyer who fails to consult the Court's electronic records has not conducted an adequate inquiry within the meaning of [Bankruptcy] Rule 9011.'" (Mot. 5 (quoting *In re Oliver*, 323 B.R. at 773)). In addition, as stated in the UST's cited case of *In re Oliver*, "[l]awyers who file petitions in bankruptcy have a duty to conduct a reasonable investigation to make sure that petitions are filed in good faith and not for improper purposes." *In re Oliver*, 323 B.R. at 773. "Repeated bankruptcy filings are a strong indicator of bad faith which should trigger a heightened scrutiny on the part of a lawyer." *Id.* (citing *In re Armwood*, 175 B.R. 779, 789-90 (Bankr. N.D. Ga. 1994).

6

In 2005, a bankruptcy judge in Pennsylvania emphasized the importance of conducting a PACER search to guard against repeated filing by debtors:

> The problem of serial filing of Chapter 13 cases is epidemic in no small part because of lawyers who will take any case at the request of a debtor about to lose his or her house to a sheriff's sale. Cases are filed without any investigation of the bona fides of the bankruptcy reorganization. Admittedly clients appear on the doorstep at the 11th hour and the exigency of the circumstance often precludes more than a cursory review of the debtor's financial situation. However, as a result of the advent of electronic documents, a few clicks of the mouse enable an attorney to discovery [*sic*] that client's bankruptcy history. Given the requirement that the petition identify all cases filed within the last six years by location, case number[,] and date filed, *I believe a PACER search should be done by every lawyer prior to filing a petition with this Court*.

*In re Oliver*, 323 B.R. at 772-73 (quoting *In re Bailey*, 321 B.R. 169, 179 (Bankr. E.D. Pa. 2005) (emphasis preserved)).

Zinner acknowledges that he frequently files cases in the Eastern District of New York Bankruptcy Court (Resp. 4 ¶ 15.) Therefore, he would be sufficiently familiar with the PACER system to make an inquiry even under great time pressure. He did not dispute such familiarity and his failure to conduct a PACER search was not adequately explained. Thus, under the circumstances, the Court finds cause for disgorgement due to Zinner's failure to conduct a PACER search.

Further, although Zinner was under great time pressure, the Court finds that his failure to inquire beyond the question as to whether the Debtor previously filed a chapter 7 petition was not a reasonable inquiry. As Zinner stated in his response, he had asked Debtor whether Debtor had previously filed a chapter 7 petition and Debtor answered in the negative. (Resp. 2 ¶ 5.) However, the Petition did not distinguish among the types of bankruptcy cases, and simply required disclosure of "[a]ll [p]rior [b]ankruptcy [c]ases [w]ithin [the] [l]ast 8 [y]ears." U.S. Bankr. Ct., S.D.N.Y. Manhattan Div., *Official Form*

7

*1* (4/10), at 2 [hereinafter *Official Form 1*]. Zinner's questioning was insufficient because it should have included questions relating to any prior Chapter 11 and Chapter 13 bankruptcy filings.

Thus, even if one excuses Zinner's failure to conduct a PACER search because of the time pressure, his failure to adequately inquire about Debtor's prior bankruptcy filings warrants disgorgement.

### 3. Cause for Disgorgement Due to Zinner's Lack of Reasonable Inquiry Subsequent to Filing of Petition

The remaining thrust of the UST's argument for disgorgement focuses on Zinner's duties after the filing of the Petition. The UST argues that disgorgement of the $4,000 fee is warranted because of Zinner's lack of reasonable inquiry subsequent to the filing of the Petition and prior to the filing of Debtor's schedules. "The duty of reasonable inquiry imposed upon an attorney requires the attorney . . . to seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor." *In re Thomas*, 337 B.R. at 892; *In re Robinson*, 198 B.R. 1017, 1024 (Bankr. N.D. Ga. 1996). The court in *In re Robinson* acknowledged that "[s]ometimes . . . inquiry is not possible until the case is filed, usually where the Debtor's attorney has little time to investigate while preparing a case for filing in a short period of time to protect the Debtor's rights . . . ." *In re Robinson*, 198 B.R. at 1024. The Robinson court, however, observed that Debtor's attorney knew within the first ten days after the filing of the case that Debtor had no intent to reorganize, concluding that "Debtor's attorney should have immediately attempted to persuade the debtor to voluntarily dismiss the case. If the debtor adamantly refused to dismiss, the attorney could have sought to withdraw for cause." *Id.* (emphasis omitted).

8

The UST emphasizes that Zinner was "put on notice of the prior filings *three days*[5] [*sic*] after the case was filed when the Court added an entry of the prior filings on the case docket." (Mot. 5) (emphasis in original). During the hearing on the motion, the UST argued that in between the filing of the petition on May 10, 2010, and the filing of Debtor's schedules on July 2, 2010, Zinner could have easily discovered Debtor's previous filings, and upon discovery, should have reported such fact to the Court. Rather than seeking relief from the Court as mandated in cases such as *In re Thomas* and *In re Robinson*, the UST asserts that "counsel has remained silent". (Mot. 5).

Zinner acknowledges that he became aware of Debtor's multiple filings after he had filed the Petition. (Resp. 2 ¶ 8.) He further admits "prepar[ing] with utmost diligence the requisite schedules" *after* learning of Debtor's previous filing status. (Resp. 3 ¶ 11). Zinner observes that "the instant Chapter 7 case is the only one that the Debtor *affirmatively* filed as a Chapter 7. To that end, the Debtor has come the road that those who have failed to restructure their obligations come to [*sic*] after failed Chapter 11 and Chapter 13 filings, to wit, liquidation." (Resp. 5 ¶ 19) (emphasis supplied). However, as noted previously, the Petition did not distinguish among the types of bankruptcy cases, and simply required disclosure of "[a]ll [p]rior [b]ankruptcy [c]ases [w]ithin [the] [l]ast 8 [y]ears". *Official Form 1*, at 2.

Zinner's failure to perform a reasonable investigation after the filing of the Petition, as well as his failure to seek relief from the Court upon learning that he was misled by Debtor, warrant disgorgement. Since the Court has found that disgorgement of

---

[5] The Petition was filed on May 10, 2010, and, as stated above, the Court entered a notation that Debtor was a "repeat filer" on May 14, 2010, putting Zinner on notice of Debtor's prior filings *four days* after the Petition was filed. *See supra*, note 2.

9

the entire $4,000 fee is warranted, there is no need to address the reasonableness of the fee at issue.

### III. Conclusion

For the foregoing reasons, the UST's motion seeking disgorgement of funds paid to Debtor's counsel is **GRANTED**.

Counsel for UST is to settle an order consistent with this opinion.

Dated: New York, New York
       September 7, 2010

                                    **s/Arthur J. Gonzalez**
                                    ARTHUR J. GONZALEZ
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE